UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| R&Q REINSURANCE COMPANY, f/k/a ACE AMERICAN REINSURANCE COMPANY, f/k/a CIGNA REINSURANCE COMPANY, f/k/a INA REINSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>ST. PAUL FIRE & MARINE INSURANCE COMPANY,<br><br>Defendants. | Case No. 15-cv-7784<br><br>Judge Sharon Johnson Coleman |

**MEMORANDUM OPINION AND ORDER**

R&Q Reinsurance Company ("R&Q") filed a complaint for declaratory judgment against St. Paul Fire & Marine Insurance Company ("St. Paul"), asking this Court to find it had no obligation to pay St. Paul under a reinsurance contract because St. Paul's notice of loss was not timely. St. Paul now moves to transfer the case to the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1404(a). For the reasons stated below, the Court grants the motion.

**Background**

In 1979, St. Paul and R&Q entered into a reinsurance contract in which R&Q agreed to reinsure commercial umbrella liability policies issued by St. Paul. Dkt 1 ¶6. At the time the contract was negotiated and formed, the insurance broker who helped St. Paul secure the contract, Guy Carpenter & Co., was located in Chicago. *Id.* So too were the R&Q employees who executed the contract. *Id.* St. Paul was located in Minnesota. *Id.* ¶ 9. The specific policies to be reinsured were identified in Certificates of Facultative Reinsurance issued by R&Q. *Id.* ¶ 6. One such certificate was FRC 033366 ("the certificate"), which reinsured an excess umbrella liability policy ("the policy") that

St. Paul had issued to Walter E. Campell, Co. ("Campbell",) for the period April 1, 1981 to April 1, 1982. *Id.* ¶ 8. The certificate provided that St. Paul was required to "promptly" advise R&Q of "any occurrence and any subsequent developments pertaining thereto" which in the opinion of St. Paul might implicate R&Q's reinsurance. *Id.* ¶ 11.

Pursuant to the policy, St. Paul defended and indemnified Campbell in several asbestos personal injury lawsuits. *Id.* ¶¶ 13-15. In April 2013, St. Paul sent R&Q its first notice of loss and demanded payment under the certificate. *Id.* ¶ 16. The notice of loss was sent via Guy Carpenter's Hartford, Connecticut office. Dkt. 21-6. In September 2015, R&Q filed suit for breach of contract and asked this Court for a declaratory judgment that it was not obligated to pay St. Paul because St. Paul had failed to provide prompt notice as required by the certificate. The following month, St. Paul filed a parallel suit for damages against R&Q in the Eastern District of Pennsylvania. Dkt. 21-2.

At the time the Illinois action was filed, R&Q was a Pennsylvania corporation and St. Paul was a Connecticut corporation. Dkt. 1 ¶¶ 1-2.

**Legal Standard**

A court may order transfer pursuant to 28 U.S.C. §1404(a) when "(1) venue is proper in both the transferor and transferee court; (2) transfer is for the convenience of the parties and witnesses; and (3) transfer is in the interests of justice." *Clear Lam Packaging, Inc. v. Rock-Tenn Co.*, No. 02 C 7491, 2003 WL 22012203, at *3 (N.D. Ill. Aug. 22, 2003).

**Discussion**

The parties do not dispute that venue is proper in this district and in the proposed transferee district. They only dispute whether transfer will serve the convenience of the parties and the interests of justice. When evaluating the convenience prong, courts are to consider "(1) the plaintiff's choice of forum, (2) the situs of the material events, (3) the relative ease and access to sources of proof, (4) the convenience of the parties, and (5) the convenience of the witnesses." *Amoco Oil Co. v.*

*Mobil Oil Corp.*, 90 F. Supp. 2d 958, 960 (N.D. Ill. 2000). When examining whether a transfer is in the interest of justice, the analysis "focuses on the efficient administration of the court system, rather than the private considerations of the litigants." *Id.* at 961. The Court should therefore consider the speed at which the case will proceed to trial, the court's familiarity with the applicable law, and each forum's relative interest in resolving the dispute. *Id.* at 961–962.

*1. Convenience Factors*

*a. Plaintiff's Choice of Forum*

A plaintiff's choice of forum is ordinarily granted substantial deference as long as the forum is somehow related to the case. *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 979 (7th Cir. 2010). However, when there are two suits in different venues, each concerning the same set of facts, "this factor loses its significance entirely." *Id.* Furthermore, where one of the actions is for declaratory judgment and the other for damages or an injunction, the Seventh Circuit gives priority to the choice of forum in the suit for non-declaratory remedies, regardless of which action was filed first. *Id.* at 980. Consequently, this factor either favors transfer or is neutral.

*b. Situs of Material Events*

St. Paul asserts that the events most relevant to this case are the communications regarding the notice of loss, which occurred mostly between individuals and entities located in Pennsylvania and Connecticut. In contrast, R&Q focuses on the communications about the negotiation and execution of the reinsurance contract, which it maintains occurred mostly in Illinois. The Court agrees with St. Paul that in a breach of contract case, the location where the business decisions allegedly causing a breach occurred is more relevant than the location of contract formation. *See, e.g., Rosman Adjustment Corp. v. Bernay,* No. 12 C 8239, 2013 WL 453197, at *2 (N.D. Ill. Feb. 6, 2013)(Kennelly, J.); *Warfield Elec. Co. v. Warfield Elec. of Texas, Inc.*, No. 99 C 2901, 2000 WL 12446, at *3 (N.D. Ill. Jan. 3, 2000)(Gettleman, J.). Furthermore, in a case involving late notice to a reinsurer,

3

the central factual inquiry is at what point the insurer became obligated to notify the reinsurer. *Zenith Ins. Co. v. Employers Ins. of Wausau*, 141 F.3d 300, 305 (7th Cir. 1998). The material events would therefore also involve communications between St. Paul and the underlying claimant Campbell (a Maryland corporation) because the information transmitted from Campbell to St. Paul is the information that would put St. Paul on notice of the need to file a claim with R&Q. Thus the bulk of material events occurred in areas much closer to Pennsylvania than Illinois, with some of the material events occurring in Pennsylvania itself, therefore favoring transfer.

*c. Ease of Access to Sources of Proof*

Where evidence is easily transferable, "access to proof" is a neutral factor. *See, e.g., Stanley v. Marion,* No. 04 C 514, 2004 WL 1611074, at *3 (N.D. Ill. July 16, 2004)(Guzman, J.). Because the parties have not pointed to any non-documentary evidence that warrants special consideration, this factor is neutral.

*d. Convenience of the Parties*

St. Paul points to the principal place of business for each party (Pennsylvania and Connecticut) in arguing that the Eastern District of Pennsylvania is a more convenient forum. R&Q does not dispute that the Eastern District of Pennsylvania is a more convenient forum for both parties, but instead argues that St. Paul "has no standing" to make arguments about what is convenient for R&Q. However, courts often consider the plaintiff's residence when evaluating the convenience of the parties, even if the plaintiff opposes transfer. *See, e.g., Caldera Pharm., Inc. v. Los Alamos Nat. Sec., LLC,* 844 F. Supp. 2d 926, 931 (N.D. Ill. 2012) (Bucklo, J.). Because the parties reside either in Pennsylvania or closer to it than to Illinois, this factor favors transfer.

*e. Convenience of the Witnesses*

St. Paul identified the following witnesses for whom the Eastern District of Pennsylvania is a more convenient forum: (1) employees of R&Q who handled St. Paul's account and are located in

4

Philadelphia; (2) St. Paul employees involved in this matter located in Connecticut; (3) an unnamed underwriter who worked on the Campbell account and is currently located "in a neighboring state to Pennsylvania"; (4) an unnamed St. Paul direct claims handler who handled the Campbell account and who works in a Philadelphia suburb; (5) Guy Carpenter employees involved in this matter who are located in Hartford, Connecticut.

In response R&Q argues that (1) the Court should not consider any unnamed witnesses or any party witnesses in its analysis; (2) St. Paul has not adequately explained the relevance of the Guy Carpenter witnesses, and (3) key non-party witnesses who were involved in the negotiation and formation of the contract are located in Illinois.

The predominant view among district courts in this circuit is that "the convenience factor is less significant with regard to party witnesses than non-party witnesses." *Qurio Holdings, Inc. v. Comcast Cable Commc'ns, LLC*, No. 14 C 7488, 2015 WL 535981, at *3 (N.D. Ill. Feb. 9, 2015)(Kennelly, J.). Nonetheless, "giving a factor less weight is not the same as giving it no weight." *Id.* at 4. Whatever little weight it should be afforded, the convenience of the party witnesses favors transfer. It is undisputed that the party witnesses are located either in the Eastern District of Pennsylvania or closer to it than to this Court.

The convenience of the non-party witnesses also favors transfer. Although R&Q asserts that St. Paul has not adequately explained the significance of the Guy Carpenter witnesses, their significance is evident from the exhibits attached to St. Paul's motion. It was Guy Carpenter, via its employee Joseph Domingo, who transmitted the allegedly late notice to R&Q. Thus Domingo and other Carpenter employees are likely to have information about the timing of the decision to provide R&Q the notice of loss. As discussed above, the central factual dispute is the decision to provide notice at the time it was provided, not the negotiation and formation of the contract. Therefore the

5

Illinois non-party witnesses identified by R&Q are less material to the case than the Guy Carpenter witnesses identified by St. Paul.

2. *Interests of Justice Factors*

*a. Speed to Trial*

When considering the speed to trial factor, the Court looks to Federal Court Management Statistics[1] to evaluate which forum would provide a quicker resolution for the parties. The most recent tables of Federal Court Management Statistics show that the median time between filing and trial is 33 months in the Northern District of Illinois, making it the 54th speediest district. The Eastern District of Pennsylvania is ranked 27th, with a median filing-to-trial time of 24.5 months. The median time for disposition prior to trial is 7.3 months in the Northern District of Illinois; its rank in this category is 17. The Eastern District of Pennsylvania is ranked the 6th speediest district for disposing of cases prior to trial, with a median resolution time of 5.5 months. Because this action is more likely to be resolved sooner in the Eastern District of Pennsylvania than in this Court, this factor favors transfer.

*b. Familiarity with Applicable Law*

In order to assess each forum's familiarity with the applicable law, this Court must first assess what law applies to this case. Because this is a diversity action, the Court must apply the choice of law principles of the state in which it sits. *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 774 (7th Cir. 2014). "Ordinarily, Illinois follows the Restatement (Second) of Conflict of Laws (1971) in making choice-of-law decisions." *Morris B. Chapman & Associates, Ltd. v. Kitzman*, 739 N.E.2d 1263, 1269 (Ill. 2000). Section 188 of the Restatement dictates that the law of the state with the most significant contacts to the contract should apply. Restatement (Second) of Conflict of Laws § 188 (1971). In determining which state has the most significant contacts, the Court must consider (1) the place of

---

[1] *available at* http://www.uscourts.gov/statistics-reports/analysis-reports/federal-court-management-statistics.

contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract, and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties. *Id.* These factors "are to be evaluated according to their relative importance with respect to the particular issue." *Id.* R&Q asserts that factors one and two favor the application of Illinois law. But the parties who negotiated and executed the contract communicated across multiple states, only one of which was Illinois. Furthermore, as discussed above, the place of contracting and negotiation is less important to the particular issue of late notice than the place of alleged non-performance and the location of the subject matter of the contract. These and the other remaining factors indicate the laws of Connecticut, Maryland, Minnesota, or Pennsylvania might apply. Without needing to determine definitively which state's law should apply in this case, the Court can easily conclude that Illinois law is unlikely to be applied. This factor therefore either favors transfer or is neutral.

*c. Relationship of Communities to Litigation*

Illinois' interest in this action is weak relative to that of Pennsylvania. Neither party is an Illinois resident, Illinois law is not likely to apply, and the events most relevant to the action occurred outside of Illinois. This factor favors transfer.

**Conclusion**

As set forth above, all of the factors either weigh in favor of transfer or are neutral. For the foregoing reasons, Defendants' motion to transfer is granted.

IT IS SO ORDERED.

_____
SHARON JOHNSON COLEMAN
United States District Judge

DATED:  March 30, 2016